552 So.2d 215 (1989)
Catherine M. JACKSON, Appellant,
v.
George A. GEORGOPOLOUS, M.D., Appellee.
No. 88-03093.
District Court of Appeal of Florida, Second District.
October 4, 1989.
Robert F. McAuley, Tampa, for appellant.
John L. Holcomb of Hill, Ward & Henderson, P.A., Tampa, for appellee.
PARKER, Judge.
In this medical malpractice suit brought for the death of plaintiff's husband, we affirm the final judgment for defendant which was entered pursuant to a directed verdict determining that the two-year statute of limitations under section 95.11(4)(b), Florida Statutes (1987), barred the suit. This case involves when that two-year period began to run and whether it was tolled by fraudulent concealment.
*216 Between December 25, 1984, when the decedent entered the hospital, and February 23, 1985, when he died in the hospital, Dr. Georgopolous performed four operations on the decedent. Therefore, the incident giving rise to any cause of action for medical malpractice had to have occurred between those dates. Any injury which may have caused the death also occurred between those dates. The family investigation, however, was not begun until February of 1986, and the suit was not filed until August of 1987.
The plaintiff knew that Dr. Georgopolous performed the surgery, and plaintiff had been aware of the decedent's seriously deteriorating condition thereafter and prior to his death at the hospital. Decedent's hospital records were available and not denied to his family. His death certificate, which the decedent's family received shortly after his death, indicated the nature of the surgery and of the injury.
The death certificate attributed the death to "multiple organ failure due to or as a consequence of ... sepsis from duodenal cutaneous fistula due to or as a consequence of repaired abdominal exploration secondary to bowel obstruction due to adhesions." This can be read as meaning generally that death resulted from:
 sepsis ["a toxic condition resulting from the multiplication of pathogenic bacteria and their products in a region of infection and their absorption into the blood stream," Webster's Third New International Dictionary 2070 (1970)],
 from a fistula ["an abnormal congenital or acquired passage leading from an abscess or hollow organ to the body surface or from one hollow organ to another and permitting passage of fluids (as pus) or secretions," id. at 859],
 in the duodenum ["part of the small intestine," id. at 702],
 due to exploratory abdominal surgery, or repair thereof, involving a bowel obstruction from adhesions ["the abnormal union of surfaces normally separate by the formation of new fibrous tissue resulting from an inflammatory process," id. at 26].
The statute of limitations bars this action. The plaintiff was aware of decedent's seriously deteriorating condition prior to his death at the hospital after his surgery. His hospital records were available and not denied to his family. His death certificate, which is described above, was also available to the family, and, in fact, was read at the decedent's funeral by at least one of decedent's sons more than two years prior to the filing of suit. As the trial court noted, "[I]f [defendant] told them the precise facts as he knew them ..., they'd have no more than they did when they got the death certificate."
In Nardone v. Reynolds, 333 So.2d 25, 35 (Fla. 1976), the supreme court, quoting from Morgan v. Koch, 419 F.2d 993, 997 (7th Cir.1969), stated "the statute [of limitations] is tolled only for those who remained ignorant through no fault of their own... . The party seeking protection [from the effect of the statute] must have exercised reasonable care and diligence in seeking to learn the facts... ." In this case, the plaintiff, with due diligence, could have determined what the death certificate meant, either from use of a dictionary or from consultation with someone familiar with that type of terminology. The plaintiff failed to pursue timely any action she may have had and is now barred because she filed her lawsuit six months late.
Further, we find no evidence of fraudulent concealment by Dr. Georgopolous so as to toll the statute of limitations. There was no affirmative misrepresentation by Dr. Georgopolous of the injury to decedent or of the surgical incident resulting in that injury. See Nardone, 333 So.2d at 35, 39-40. We agree.
Affirmed.
RYDER, A.C.J., concurs.
LEHAN, J., concurs specially with opinion.
LEHAN, Judge, concurring specially.
At issue in this case is the precise nature of the notice of injury which triggers the medical malpractice statute of limitations. While I concur in the result reached in the *217 majority opinion, this case, in my view, invites an explanation of the body of case law involving that issue which, on first impression, may appear to include inconsistent cases, but which, upon close analysis, does not. That inconsistency may appear to exist between language in, for example, Moore v. Morris, 475 So.2d 666 (Fla. 1985), and Nardone v. Reynolds, 333 So.2d 25 (Fla. 1976), on the one hand, and various other cases discussed below, notably Florida Patient's Compensation Fund v. Sitomer, 524 So.2d 671 (Fla. 4th DCA), rev. dismissed, 531 So.2d 1353 (Fla. 1988), on the other hand. That the lawyers and the trial court in this case had substantial difficulty trying to reconcile the case law is reflected in the transcript of the arguments in the trial court on the defendant's motion for a directed verdict.
In my view the cases in this area of the law can properly be harmonized, as this concurring opinion undertakes to do. In so doing this opinion undertakes a fairly in depth analysis in order to explain that harmony and thereby to fulfill a primary appellate court function of clarifying the law when clarification is needed. See Scheb, Florida's Courts of Appeal: Intermediate Courts Become Final, 13 Stetson L.Rev. 479 (1984). To accomplish that function, the remainder of this opinion must be, and is, written in the form of a full opinion. That is because all aspects are interrelated, especially how the facts of this case and of other cases may be perceived and phrased. That is also, incidentally, because the remainder of this opinion was initially written as the intended opinion of the court before the majority opinion was written, which accounts for the duplication of language in some procedural and factual parts of the majority opinion and of the remainder of this opinion.
In this medical malpractice suit brought for the death of plaintiff's husband this court affirms the final judgment for defendant which was entered pursuant to a directed verdict determining that the two year statute of limitations under section 95.11(4)(b), Florida Statutes (1987), barred the suit. This case involves when that two year period began to run and whether it was tolled by fraudulent concealment.
The uncontroverted evidence established that more than two years had elapsed at the time of the filing of the suit from the time plaintiff knew or had notice of the injury to the decedent resulting from an incident involving defendant which led to decedent's death, i.e., abdominal surgery performed on decedent by defendant. The sources of that knowledge or notice were as follows. Plaintiff knew that defendant performed the surgery, and plaintiff had been aware of the decedent's seriously deteriorating condition thereafter and prior to his death at the hospital. Decedent's hospital records were available and not denied to his family. His death certificate indicated the nature of the surgery and of the resulting injury.
The death certificate attributed the death to "multiple organ failure due to or as a consequence of ... sepsis from duodenal cutaneous fistula due to or as a consequence of repaired abdominal exploration secondary to bowel obstruction due to adhesions." This can be read as meaning generally that death resulted from:
 sepsis ["a toxic condition resulting from the multiplication of pathogenic bacteria and their products in a region of infection and their absorption into the blood stream," Webster's Third New International Dictionary 2070 (1970)],
 from a fistula ["an abnormal congenital or acquired passage leading from an abscess or hollow organ to the body surface or from one hollow organ to another and permitting passage of fluids (as pus) or secretions," id. at 859],
 in the duodenum ["part of the small intestine," id. at 702],
 due to exploratory abdominal surgery, or repair thereof, involving a bowel obstruction from adhesions ["the abnormal union of surfaces normally separate by the formation of new fibrous tissue resulting from an inflammatory process," id. at 26].
Whether or not plaintiff fully understood the terminology used in the death certificate, which is defined in a standard dictionary, *218 is not the point. The point is that with due diligence the plaintiff could have understood what the death certificate meant, either from use of a dictionary or from consultation with someone familiar with that type of terminology. As was said in Nardone, 333 So.2d at 34-35 (Fla. 1976), quoting from Morgan v. Koch, 419 F.2d 993, 997 (7th Cir.1969), "the statute [of limitations] is tolled only for those who remained ignorant through no fault of their own... . The party seeking protection [from the effect of the statute] must have exercised reasonable care and diligence in seeking to learn the facts... ."
Therefore, the time under section 95.11(4)(b) for the filing of suit had expired, even though there was evidence that it was not until a time within two years prior to the filing of suit that plaintiff received particular notice, from a comment as to what a nurse apparently believed, of alleged negligence in the performance of the surgery. See Moore, 475 So.2d at 667 (Fla. 1985), quoting Nardone, 333 So.2d at 32 (medical malpractice statute of limitations is triggered under two alternative bases, either when "the plaintiff has notice of the negligent act giving rise to the cause of action or when the plaintiff has notice of the physical injury which is the consequence of the negligent act."). The second alternative applies in this case.
In Nardone, on which Moore relied, the Florida Supreme Court, in stating that in that case "the statute of limitations began to run when the injury was known," rejected the contention that "the statute of limitations did not commence to run until [plaintiffs] became aware of the negligence of the physicians and hospital." Id. at 32. And, as Nardone also indicated, in order to trigger the statute plaintiffs need not be aware of an invasion of their legal rights but need only be "on notice of the possible invasion of their legal rights." Id. at 34. The sources of the notice to plaintiffs in Nardone which triggered the statute in that case were similar to those in this case: constructive notice of hospital and other records which showed the nature of the injury and of the incident involving defendant resulting in the injury, id. at 28-31, 34, and actual awareness of "the physical condition and the drastic change therein during the course of medical treatment... ." Id. at 27.
Notice of "injury," as used in the above-quoted portions of Moore and Nardone concerning one of the two kinds of knowledge or notice in this sort of case which trigger the statute of limitations, necessarily includes not only knowledge or notice of the existence of particular physical injury but also of the incident involving defendant resulting in that injury, which was the kind of notice plaintiff had in this case.[1]See Phillips v. Mease Hospital and Clinic, 445 So.2d 1058, 1061 (Fla. 2d DCA 1984). That is what it may be concluded Moore and Nardone meant by saying that injury, notice of which triggers the statute, must be that which "is the consequence of the negligent act," as is additionally explained further below.
Thus, in Nardone the statute of limitations was held to have been triggered at the time the injured child's parents in that case, with constructive notice of the surgical incident involving defendants at the hospital allegedly resulting in the injury (blindness), had knowledge of the injury. In Moore the statute of limitations was held to have not been triggered at the time the parents of the injured infant in that case knew of the surgical incident involving defendant at the hospital at the infant's birth allegedly resulting in the injury (brain damage) inasmuch as they then had no reason to know of that injury or that the surgery had been negligently performed. See also Elliot v. Barrow, 526 So.2d 989, 991 (Fla. 1st DCA 1988) (medical malpractice statute of limitations not triggered by plaintiff's knowledge [or notice] of injury and of incident involving defendant's treatment of plaintiff "without further knowledge [or notice] that [the incident] was *219 caused by negligence or that it actually resulted in injury....").
Sitomer recognizes that more than merely knowledge or notice of an injury is necessary to trigger the medical malpractice statute of limitations. But there is language in Sitomer which might, contrary to the foregoing discussion of and quotations from Moore and Nardone, seem to require, in addition to knowledge or notice of an injury resulting from an incident involving defendant, knowledge or notice of defendant's negligence:
[I]n Schafer v. Lehrer, 476 So.2d 781 (Fla. 4th DCA 1985), this court held that knowledge of a physical injury alone, without knowledge that the injury resulted from a negligent act, does not trigger the limitations period. While the plaintiff may not have actual knowledge of the negligence, if the plaintiff should have known that the injury was caused by tortious conduct, through constructive notice, then the limitations period begins to run. See Humber v. Ross, 509 So.2d 356, 359 (Fla. 4th DCA 1987). Thus, the statute of limitations in a medical malpractice case begins to run when the plaintiff has been put on notice of an invasion of his legal rights, which occurs when the plaintiff has notice of either the negligent act giving rise to the cause of action, or the existence of an injury that is the consequence of the negligent act. Nardone v. Reynolds, 333 So.2d 25 (Fla. 1976); ... It must be remembered however, that knowledge of an injury, without more, does not necessarily put a patient on notice that the injury was caused by the negligence of another. It would have been erroneous for the trial court to instruct the jury that knowledge of the injury alone, without knowledge (actual or constructive) that it was caused by a negligent medical procedure, would have been sufficient to trigger the limitations period.
Nonetheless, Sitomer may be construed to be harmonious with our holding in this case. Under Sitomer knowledge or notice of injury need not include knowledge or notice of negligence in order to trigger the statute, and Sitomer need not be construed as inconsistent with this opinion's foregoing interpretation of the necessary meaning of the word "injury" as used in Moore and Nardone, as will be explained.
That Sitomer language may be harmonized with the result in this case (and, at the same time, with Moore and Nardone) by concluding that the references in Sitomer to a requirement of knowledge or notice of causation of an injury by a "negligent act," by "tortious conduct," by "negligence," and by "negligent medical procedure," in addition to knowledge (or notice) of the injury, in order to trigger the statute of limitations mean no more than what this opinion has said by requiring, in addition to knowledge or notice of injury, knowledge or notice of an incident involving defendant resulting in that injury, whether or not plaintiff should at the time of receiving the knowledge or notice have concluded that the incident constituted negligence. Those references in Sitomer do not, it may be concluded, mean that there must have been knowledge or notice that defendant's conduct fulfilled a definition of negligence, e.g., that the conduct fell below the applicable standard of care.
Notice of a "negligent act" which is one of the two alternative bases for triggering the statute as stated in Nardone as quoted further above, which Moore follows and which Sitomer cites, need not be equated with any of those above-quoted references in Sitomer which specify what notice of causation must exist in addition to notice of "injury" as a basis for triggering the statute of limitations. Under Moore and Nardone as quoted further above, notice of a "negligent act" is an alternative to notice of "injury" as a basis for triggering the statute and must, in order to distinguish each of those alternative bases from the other, refer to notice of negligence in the performance (or nonperformance) of an act, as contrasted with notice of injury and of the incident involving defendant resulting in the injury. Stated in another way, if the reference in the above-quoted language in Sitomer to knowledge or notice of causation of an injury by the term "negligent act" as a requirement, in addition to knowledge *220 or notice of the injury, in order to trigger the statute meant knowledge or notice of negligence, then knowledge or notice of injury as one alternative basis under Nardone and Moore for triggering the statute would be superfluous because the other alternative basis is knowledge or notice of a "negligent act," i.e., of negligence, which would trigger the statute by itself. Sitomer appears to have used that term simply to show that in order for the statute to be triggered by knowledge (or notice) of injury, there must additionally be knowledge (or notice) that the injury resulted from the act of defendant in the commission of which he is alleged to be negligent.
That is, the term "negligent act" as used in describing each of the two different kinds of knowledge or notice which under Moore and Nardone trigger the statute can have two significantly different meanings relating to when the statute is triggered. It can refer to notice of negligence by defendant in the performance (or nonperformance) of an act (which might be thought of as patent negligence), or it can refer to notice of an act or incident involving defendant resulting in injury which need not necessarily seem to be negligence at the time of the notice but which may ultimately be determined by a jury to have been negligence (which might be thought of as latent negligence). Moore and Nardone, in speaking of notice of a "negligent act" as one basis for triggering the statute, use that term in the former sense and thereby distinguish that term as such a basis from the alternative basis, notice of "injury," which, as pointed out above, need be no more than notice of injury resulting from an incident involving defendant. On the other hand, Sitomer, which, as quoted above, in effect uses knowledge (or notice) of a "negligent act" and of terms like that as a requirement, in addition to knowledge (or notice) of "injury," to trigger the statute, must have used that term in the latter sense.
The holding in Sitomer, consistent with our holding in this case, can be taken to be that the medical malpractice statute of limitations is not triggered at the time plaintiff knows of the injury if the plaintiff then has no knowledge or notice of the incident involving defendant resulting in the injury. Other Fourth District Court of Appeal cases which contain language similar to some of the above-quoted language in Sitomer can be similarly harmonized with the result in this case and with Moore and Nardone: Shapiro v. Barron, 538 So.2d 1319 (Fla. 4th DCA 1989) ("[K]nowledge of physical injury alone, without the knowledge that it resulted from a negligent act, does not trigger the statute of limitations"; the holding in Shapiro, consistent with the result in this case and with Moore and Nardone, can also be taken to be that the medical malpractice statute of limitations is not triggered at the time plaintiff knows of the injury if the plaintiff then has no knowledge or notice of the incident involving defendant resulting in the injury.); Florida Patient's Compensation Fund v. Tillman, 453 So.2d 1376, 1379 (Fla. 4th DCA 1984) (medical malpractice statute of limitations is triggered by notice to plaintiff of "(1) a medical procedure (2) tortiously performed (3) which injures (damages) the patient"; the holding in Tillman, consistent with the result in this case and with Moore and Nardone, can be taken to be that the statute of limitations is not triggered at the time plaintiff knows of the incident involving defendant which is ultimately determined to have resulted in the injury if the plaintiff then has no reason to know of the injury, or, in the alternative, that the statute is not triggered without knowledge by plaintiff of the incident.).
This opinion has addressed the two alternative kinds of knowledge or notice which trigger the medical malpractice statute of limitations pursuant to Moore and Nardone. As to the alternative of knowledge or notice of "injury," this opinion is not saying that simply knowledge or notice of injury and of the fact that defendant had treated plaintiff would automatically trigger the statute. In particular cases there may be fact questions as to whether the requisite knowledge or notice existed, for example, whether there was notice that the injury to plaintiff resulted from treatment by defendant. See, e.g., Shapiro; Elliot; *221 Schafer. There was no such question in this case, as indicated in the above paragraph of this opinion which outlines the uncontroverted evidence.
The result in this case does not, of course, represent a policy decision that the time for suing defendants in medical malpractice cases should thus be limited. The result simply follows what is understood to be the policy decision of the Florida legislature as interpreted by the Florida Supreme Court.
This opinion need not and does not address whether, as plaintiff contends, there was a fact question for the jury concerning the existence of fraudulent concealment by defendant so as to toll the statute of limitations, except to note the absence of evidence of an affirmative misrepresentation by defendant of the injury to decedent or of the surgical incident resulting in that injury. See Nardone, 333 So.2d at 35, 39-40. The trial court ruled that fraudulent concealment could not have tolled the statute of limitations. For the following reasons that ruling was proper.
As stated above, the plaintiff was aware of decedent's seriously deteriorating condition prior to his death at the hospital after his surgery. As also stated above, his hospital records were available and not denied to his family. His death certificate, which is described above, was also available to the family, and, in fact, was read at the decedent's funeral by at least one of decedent's sons more than two years prior to the filing of suit. As the trial court noted, "[I]f [defendant] told them the precise facts as he knew them ..., they'd have no more than they did when they got the death certificate." See Nardone, 333 So.2d at 34 ("[K]nowledge of the medical, doctor, hospital, etc. records concerning the ... patient which are of a character as to be obtainable by, or available to, the patient but the contents of which are not known should be imputed to the [plaintiff]... . The means of knowledge are the same as knowledge itself."), 333 So.2d at 37 (fraudulent concealment by defendant of facts which "can be discovered through reasonable diligence" by plaintiff will not toll the medical malpractice statute of limitations). See also Nardone, 333 So.2d at 34-35 as quoted further above.[2]
NOTES
[1] The term "physical" is used because Nardone speaks in this regard of "physical injury." 333 So.2d at 32. However, mental injury, which is not involved in this case, would not seem to be ruled out.
[2] It could be argued that there could not be knowledge or notice of an injury resulting from an incident involving defendant which would trigger the medical malpractice statute of limitations without there also being knowledge or notice of such an injury which would preclude the tolling of the statute under the doctrine of fraudulent concealment. That is, under that argument knowledge or notice of injury which triggers the statute in the first instance would also necessarily preclude its tolling under the doctrine of fraudulent concealment. However, although in this case the plaintiff's knowledge and notice which triggered the statute was the same as that which precluded the tolling of the statute under the doctrine of fraudulent concealment, this opinion need not, and does not, address that argument.