586 So.2d 74 (1991)
Blanche GOODLET, individually, and as Personal Representative of the Estate of Terri Lynn Christy (Flateau), Appellant,
v.
Dr. Eric STECKLER, Appellee.
No. 90-03483.
District Court of Appeal of Florida, Second District.
August 7, 1991.
Rehearing Denied September 11, 1991.
Joseph N. Perlman, Largo, for appellant.
Kenneth C. Deacon, Jr., and Russell Ellis Artille of Harris, Barrett, Mann & Dew, St. Petersburg, for appellee.
ALTENBERND, Judge.
Blanche Goodlet, the mother of Terri Lynn Christy and personal representative of her daughter's estate, appeals a final summary judgment concerning the estate's medical malpractice action against Dr. Steckler. The trial court granted the judgment on the ground that the action had been filed outside the applicable statute of limitations. We affirm, because Dr. Steckler had provided the personal representative with at least the minimum factual information necessary to commence the running of the statute of limitations more than two years before the personal representative served the presuit notice. University of Miami v. Bogorff, 583 So.2d 1000 (Fla. 1991); Barron v. Shapiro, 565 So.2d 1319 (Fla. 1990).
Terri Lynn Christy died on March 26, 1987, at the age of twenty-eight. According to the plaintiff's complaint, on March 11, 1987, Ms. Christy visited the emergency room at Largo Medical Center Hospital with complaints of pain in her right leg. She was hospitalized on March 12, and she was treated by Dr. Steckler for a deep venous thrombosis until her release on March 25. Ms. Christy returned to the hospital on March 26 and died of an apparent cardiac arrest.
The medical malpractice action against Dr. Steckler was filed on September 21, 1989. Although the plaintiff had apparently sent a presuit notice to the hospital on March 7, 1989, no notice was sent to Dr. Steckler until August 10, 1989. See § 768.57, *75 Fla. Stat. (1987); cf. § 766.106, Fla. Stat. (1989). In this case, the notice to the hospital was not notice to Dr. Steckler. See Ingersoll v. Hoffman, 561 So.2d 324 (Fla. 3d DCA 1990).[1] We conclude that the notice to Dr. Steckler was untimely because the plaintiff had discovered the "incident" or, with due diligence, should have discovered that incident prior to August 10, 1987. § 95.11(4)(b), Fla. Stat. (1987).
The evidence at summary judgment was very limited, but undisputed. Blanche Goodlet's affidavit confirmed that Dr. Steckler called her on April 3, 1987, and told her that he was her daughter's treating physician and that her daughter had died. In Bogorff, the supreme court reaffirmed Barron and held that the medical malpractice statute of limitations "commences when the plaintiff should have known of either (1) the injury or (2) the negligent act." Bogorff, 583 So.2d at 1002. When Ms. Goodlet was informed of her daughter's death, we conclude that she was informed of the type of "injury" which the supreme court intends as one of the two factors commencing the statute of limitations.
In Bogorff, the court also stated: "Although they did not know if medical negligence caused that condition, they knew that Dr. Koch had treated Adam and knew of his injury. This was sufficient for their cause of action to accrue, thereby commencing the statutory limitation period against Dr. Koch and the University of Miami." Bogorff, 583 So.2d at 1002. Due to this language, we are uncertain whether the supreme court intends to require that a plaintiff know the identity of the treating physician before the statutory period commences. We note that the supreme court's decision in Bogorff does not discuss Judge Lehan's thorough concurring opinion in Jackson v. Georgopolous, 552 So.2d 215 (Fla. 2d DCA 1989). Whether the identity of the treating physician is a critical factor to trigger the commencement of this period is not an issue that is essential to this decision because it is undisputed that Dr. Steckler informed Ms. Goodlet of his identity as the treating physician.
Finally, this is not a case in which the plaintiff argues that the statute of limitations should be extended for fraud, concealment, or intentional misrepresentation. There is no allegation that the doctor concealed any pertinent information.
Because Bogorff is pending on rehearing as we write this decision, we note that we are uncertain whether we have followed the rule intended by that decision. From this record, we do not know when Ms. Goodlet learned that her daughter had been hospitalized or when she knew or should have known about the treatment her daughter received in the hospital. If "incident" involves knowledge of some explanation of this young woman's death, Ms. Goodlet apparently did not receive that information in the doctor's telephone call, and this record does not establish when she first learned or should have learned the story of her daughter's death.
We would suggest that the difficulty in interpreting section 95.11(4)(b), Florida Statutes (1987), stems from the problem of relating the concept of "incident" to the elements of a cause of action for medical negligence. "Incident" is not a legal term which is defined in an extensive body of tort law. The courts, however, must connect the legislative concept of "incident" to negligence law. The plaintiff is not "discovering" the facts necessary to write a good news story; the plaintiff is discovering some of the facts relating to a cause of action in negligence. Clearly, the plaintiff need not know the entire story in detail before the statute of limitations commences. The critical question is what minimum facts are essential to give the plaintiff notice that a timely investigation should begin in order to discover any additional facts needed to support a medical negligence action.
*76 From this perspective, it is fair to suggest that a medical negligence cause of action involves at least seven important factual considerations: 1) the identity of the plaintiff; 2) the existence of a relationship between the plaintiff and a health care provider that is sufficient to create a legal duty under a theory of medical negligence; 3) the identity of the health care provider who owes the duty; 4) the standard of care owing under the duty; 5) the facts establishing a breach of the standard of care; 6) proximate causation; and 7) injury. In Bogorff, the supreme court seems to trigger the statute of limitations by knowledge of facts which establish either the factor described in 7 or the factors described in 4 and 5. We are uncertain what knowledge, if any, the supreme court intends to require concerning factors 1 through 3. In this case, Ms. Goodlet had information concerning factors 1 through 3 as a result of Dr. Steckler's telephone call. Accordingly, we have no need to determine whether these factors are critical to the commencement of the statute of limitations and, if so, what information concerning those factors is essential. A holding as to these difficult issues can await a case in which they are dispositive.
Affirmed.
DANAHY, A.C.J., concurs.
LEHAN, J., concurs specially.
LEHAN, Judge, concurring.
I concur that the summary judgment should be affirmed. I write separately for the same reason I did so in Jackson v. Georgopolous, 552 So.2d 215 (Fla. 2d DCA 1988). That is to undertake to fulfill a primary appellate court responsibility of clarifying the law when clarification is needed. See Scheb, Florida's Courts of Appeal: Intermediate Courts Become Final, 13 Stetson L.Rev. 479 (1984).
In this medical malpractice suit for the death of plaintiff's daughter we affirm the trial court's summary judgment for defendant based upon the running of the two-year statute of limitations. The statute of limitations had run because more than two years prior to the filing of suit and the presuit notice plaintiff had received from defendant in a telephone conversation notice of the type described in my concurring opinion in Jackson. That was notice of "the injury and of the incident involving defendant resulting in the injury." 552 So.2d at 217, 218.
In that telephone conversation defendant, who identified himself as the daughter's treating physician, told plaintiff of her daughter's death. While he was not shown to have told plaintiff of any incident, such as a particular treatment of the daughter, involving defendant resulting in the death, he gave her notice that there had been such treatment by telling her that he was the treating physician. Thus, while this is a close case containing facts at or near the outer limits of circumstances which trigger the statute of limitations, the telephone conversation put plaintiff on notice of the possible invasion of her legal rights which is all that is necessary to trigger the statute. See University of Miami v. Bogorff, 583 So.2d 1000-1004 (Fla. 1991) (motion for rehearing pending); Jackson, 552 So.2d at 218.
The facts of this case are similar in material respects to those in Bogorff, which held that in that case there had been sufficient notice to trigger the medical malpractice statute of limitations. The reason in Bogorff may be equated to my reason in this case by substituting in the following quotation from Bogorff the concept of notice for that of knowledge and the word "daughter" for "son":
Although [plaintiffs] did not know if medical negligence caused [their son's] condition, they knew that [defendant doctor] had treated [the son] and knew of his injury.
Id. 583 So.2d at 1002. While in Bogorff the supreme court had, as it had done in prior opinions, referred to the medical malpractice statute of limitations as being triggered by only notice of "the injury," the above quoted language from the opinion in that case in effect explains, I conclude, that there was what was called notice of injury which triggered the statute because there *77 was notice of the injury and of the incident involving defendant resulting in the injury. Thus, my analysis of this case appears consistent with all the Florida Supreme Court case law in point as well as that of at least most of the district courts of appeal. See Jackson, 552 So.2d at 218-20.
To keep medical malpractice statute of limitations cases in perspective, it may be helpful to note that at opposite ends of the spectrum of types of notice which might be argued to trigger the statute may be considered, at one end, notice of only injury to plaintiff or plaintiff's decedent and, at the other end, notice of the injury and that defendant negligently inflicted it. It is clear that such notice of negligence in the infliction of injury is not required to trigger the statute. See Bogorff; Jackson. It should additionally be clear, I conclude, that only notice of an injury potentially inflicted by anyone is not enough to trigger the statute. An example might be a plaintiff having been aware that his or her son or daughter had a physical injury, without plaintiff having had any basis for any idea of who or what caused the injury; that example might include plaintiff having received a telephone call from a member of an EMS crew advising simply of the death of plaintiff's son or daughter and where the body had been taken. There must be, I conclude, what has been broadly called "notice of injury" but which includes also at least notice of the incident involving defendant resulting in the injury. Thus, there must be notice which is notice of more than only injury, i.e., which involves defendant with the injury, but which may be notice of less than negligence in the infliction of the injury.
In contrast is the statute of repose which may be triggered by only the occurrence of medical malpractice, with or without notice thereof to plaintiff, if there is then notice to plaintiff of the existence of injury and, if there is not, as in Nemeth v. Harriman, 586 So.2d 72 (Fla. 2d DCA 1991) and Lloyd v. North Broward Hosp. Dist., 570 So.2d 984 (Fla. 3d DCA 1990) (review granted), then by notice to plaintiff of injury when that notice occurs. Thus, if, contrary to my conclusion, only notice of injury triggered the statute of limitations, there would effectively be in all cases, and especially in situations like those in Nemeth and Lloyd, no practical difference between triggering the statute of limitations and the statute of repose. That is, in cases alleging the occurrence of medical malpractice both statutes would be effectively triggered by notice of injury. Yet those two types of statutes are to be triggered differently. See Bogorff, 583 So.2d at 1002. And, at the other end of the spectrum, to require, as has been in effect argued by plaintiff here, that notice of injury must include more than that provided by the telephone call in this case, i.e., must include particular notification that the defendant actually treated the plaintiff's daughter and that such treatment resulted in injury would, I conclude, require in effect notice of negligent infliction of injury, which is not necessary.
Accordingly, while in these kinds of cases summary judgment may be precluded by fact questions as to circumstances concerning notice of either defendant's involvement with an incident resulting in the injury or of the injury having resulted from that incident, see Jackson, 552 So.2d at 220, I do not conclude that such questions existed in this case. In certain cases these types of circumstances may be analyzed also from the standpoint of the doctrine of fraudulent concealment under which the statute of limitations may be tolled, or its triggering prevented, by the concealment of defendant's involvement with an incident of malpractice or the concealment of the incident having resulted in injury. See Nardone v. Reynolds, 333 So.2d 25, 35, 37 (Fla. 1976); Schafer v. Lehrer, 476 So.2d 781, 783 (Fla. 4th DCA 1985). See also Jackson, 552 So.2d at 216, 221. But fraudulent concealment has not been raised, or indicated to exist, as a facet of this case.
The principle applied in this concurring opinion  that notice of injury which is sufficient to trigger the statute of limitations includes notice of the incident involving defendant resulting in the injury  provides a measure of predictability of the consequences of one's conduct which has not *78 been prevalent in this area of the law. That is evidenced by the diverse other versions of the law in arguments of counsel in this and other cases and by the majority opinion's expressed uncertainty. Thus, the application of that principle contributes, I believe, toward fulfilling one of the main purposes of the law which is to provide "meaningful criteria for predictable consequences." Muller v. Stromberg Carlson Corp., 427 So.2d 266, 270 (Fla. 2d DCA 1983).
NOTES
[1] As a result of our holding, we do not determine whether the petition filed in circuit court on March 7, 1989, pursuant to section 768.495(2), Florida Statutes (1987), describing Largo Medical Center and "Dr. John Doe," could extend the statute of limitations beyond August 10, 1989, for an action against Dr. Steckler.