591 So.2d 1051 (1991)
Marjorie J. HARR, individually, and as Personal Representative of the Estate of Michael L. Harr, Decedent, Appellants,
v.
HILLSBOROUGH COMMUNITY MENTAL HEALTH CENTER, now known as MHC, Inc., and Sayyed Hussain, M.D., Appellees.
No. 90-02842.
District Court of Appeal of Florida, Second District.
December 27, 1991.
*1052 David A. Maney of Maney, Damsker & Arledge, P.A., Tampa, for appellant.
Clifford L. Somers of Somers & Morgan, Tampa, for appellee Sayyed Hussain.
Edwin J. Bradley, Tampa, for appellee MHC, Inc.
SCHEB, Acting Chief Judge.
The appellant, Marjorie J. Harr, individually and as personal representative of her son's estate, brought a medical malpractice suit against the Hillsborough Community Mental Health Center and Dr. Sayyed Hussain on February 15, 1989. The trial court entered final summary judgment in favor of the appellees on the ground that the two-year statute of limitations for actions against health care providers expired prior to October 20, 1988, the date the appellant filed her notice of intent to litigate. We reverse.
On the afternoon of October 2, 1986, the appellant's son, Michael Harr, was observed hooking up a flexible hose to the exhaust pipe of his pickup truck. A Hillsborough County Sheriff's deputy dispatched *1053 to investigate found suicide notes in Michael's truck. The deputy took Michael into custody pursuant to the Baker Act, section 394.451, Florida Statutes, and delivered him to the Hillsborough Community Mental Health Center at approximately 8:00 p.m. that day.
The record discloses that when Michael was routinely interviewed at the Mental Health Center, he stated he had contemplated suicide. About two hours later Dr. Hussain and Kristian Mellrose, a counselor at the Mental Health Center, discharged Michael "to self," giving him a plan of outpatient care.
Once discharged, Michael immediately went to the Hillsborough County Sheriff's Department impound lot to regain possession of his truck. As Michael drove away from the Sheriff's Department, he crashed his truck through the closed gate and threatened to kill anyone who tried to stop him. Two days later, a Pasco County deputy discovered Michael's body in his truck. A flexible hose had been connected from the truck's exhaust pipe to the truck's cab. The cause of death was carbon monoxide poisoning.
According to Mrs. Harr's deposition, she received a phone call at her home in South Dakota on October 6, 1986, informing her of her son's death. Early the following morning, October 7, Mrs. Harr called the Hillsborough County Sheriff's Department and spoke with a deputy. She asked the officer to tell her everything that was known about Michael's death. The officer told her that Michael had been taken to a "crisis center" because of depression and that later that day he had taken his life. The officer promised to send Michael's personal effects to Mrs. Harr.
In her affidavit, Mrs. Harr stated she subsequently called the Pasco County Sheriff's Department several times requesting Michael's personal belongings. Finally, on January 20, 1987, over three and one-half months after Michael's death, she received a box containing these effects. In the box Mrs. Harr found the coroner's report and the suicide note, which the sheriff's department had discovered in Michael's pickup truck. After reading this note, she learned for the first time that the crisis center where Michael had been treated on October 2, 1986, was the Hillsborough Community Mental Health Center. At the end of March, she received a copy of the evaluation report prepared by the Mental Health Center which identified Dr. Sayyed Hussain as the psychiatrist who authorized her son's release.
The Hillsborough County Mental Health Center and Dr. Hussain moved for summary judgment. They argued the two-year statute of limitations against health care providers, section 95.11(4)(b), Florida Statutes (1985), began to run on either October 6 or 7, 1986, the dates Mrs. Harr was informed of her son's death. Thus, they argued Mrs. Harr's action was barred since she did not file her notice to initiate litigation until October 20, 1988.[1] The trial judge agreed and entered final judgment, holding as a matter of law:
[T]hat plaintiff MARJORIE J. HARR was aware of the "physical injury" which was the consequence of the alleged negligence of defendants, to-wit: the death of MICHAEL L. HARR, on October 7, 1986. More than two years elapsed between that time and the date of service of notices of intent to initiate litigation. As a result, the statute of limitations, being § 95.11(4)(b), Fla. Stat. (1985) bars this action.
The issue now presented to us is whether, as a matter of law, section 95.11(4)(b), Florida Statutes (1985), as amended by the 1986 supplement, governing actions against health care providers, commenced on October 7, 1986.[2]
It is undisputed that Mrs. Harr had notice of her son's death on October 6, 1986. However, we hold that notice of *1054 more than the fact of injury to or death of a person is required to trigger the running of the statute of limitations against health care providers. Notice of a possible legal injury, i.e., notice of a possible invasion of one's legal rights, is necessary before it can be determined that one should have discovered the incident giving rise to the action. See University of Miami v. Bogorff, 583 So.2d 1000 (Fla. 1991); Rogers v. Ruiz, No. 90-01490, 1991 WL 262916 (Fla. 2d DCA Dec. 13, 1991). To trigger the running of the statute, it is necessary that the plaintiff have knowledge of the minimum facts essential to give notice that a timely investigation should commence to discover additional facts needed to support an action against a health care provider. Goodlet v. Steckler, 586 So.2d 74 (Fla. 2d DCA 1991). See also Rogers.
In Goodlet, this court stated:
[I]t is fair to suggest that a medical negligence cause of action involves at least seven important factual considerations: 1) the identity of the plaintiff; 2) the existence of a relationship between the plaintiff and a health care provider that is sufficient to create a legal duty under a theory of medical negligence; 3) the identity of the health care provider who owes the duty; 4) the standard of care owing under the duty; 5) the facts establishing a breach of the standard of care; 6) proximate causation; and 7) injury. In Bogorff, the supreme court seems to trigger the statute of limitations by knowledge of facts which establish either the factor described in 7 or the factors described in 4 and 5.
Id. at 76.
It seems clear that the supreme court in Bogorff intends for the statute of limitations to commence by the time the plaintiff has notice of Goodlet's factors 2, 3, 6 and 7. We equate notice of these factors with the concept of notice of injury and of an incident involving defendants (health care providers) resulting in an injury, as Judge Lehan discussed in Rogers. We do not believe that the supreme court intends factor 7, which refers to injury in fact, to be sufficient in isolation to commence the period of limitations. Because the evidence in this record does not undisputedly establish that the appellant had notice of the information required under factor 2 on October 7, 1986, we conclude that the statute of limitations did not begin to run on that date.
On October 7, 1986, Mrs. Harr telephoned the police from her home in South Dakota and was informed that they had taken her son to a crisis center. However, she was not informed of the name or address of the crisis center or of the nature of care that was provided. The term "crisis center" without more does not put a person on notice that a health care provider is involved. Thus, we cannot conclude as a matter of law that on October 7, 1986, Mrs. Harr possessed sufficient information to be considered on notice of a possible invasion of her legal rights. Moreover, we cannot conclude Mrs. Harr should have known either of a legal injury or the negligent act that would have commenced the limitation period before October 20, 1988. See Barron v. Shapiro, 565 So.2d 1319, 1322 (Fla. 1990).
Notice may be actual or constructive. There is no evidence that Mrs. Harr actually discovered or should have discovered the basis of her cause of action against the appellees within two years of the "incident giving rise to the action." § 95.11(4)(b), Fla. Stat. (1987). Consequently, there remains the factual question as to when the cause of action "should have been discovered with the exercise of due diligence." Id.
A trial court is not permitted to resolve issues of fact when deciding a motion for summary judgment. Moore v. Morris, 475 So.2d 666 (Fla. 1985). Where, as here, the record reflects the existence of a genuine issue of material fact or the possibility of any such issue, or if the record raises even the slightest doubt that an issue might exist, summary judgment is improper. Crandall v. Southwest Florida Blood Bank, Inc., 581 So.2d 593 (Fla. 2d DCA 1991); Gomes v. Stevens, 548 So.2d 1163 (Fla. 2d DCA 1989). Therefore, we vacate the final judgment and remand for *1055 further proceedings consistent with this opinion.
In this case, we address the issue that the court was not required to reach in either Goodlet or our recent decision in Rogers. Those decisions contain more complete discussions of the problems surrounding the medical malpractice statute of limitations. Nevertheless, we do entertain some doubt as to whether the supreme court may intend the statute to be commenced by a concept of legal injury or one of injury in fact. We are concerned that the supreme court may intend the statute to commence as soon as the plaintiff has notice of Goodlet's factors 2 and 7. Accordingly, we certify the following question to the supreme court as a matter of great public importance:
DOES THE STATUTE OF LIMITATIONS IN SECTION 95.11(4)(b) COMMENCE:
(A) WHEN THE POTENTIAL PLAINTIFF HAS NOTICE OF AN INJURY IN FACT; OR
(B) WHEN THE POTENTIAL PLAINTIFF HAS ADDITIONAL NOTICE THAT THE INJURY IN FACT RESULTED FROM AN INCIDENT INVOLVING A HEALTH CARE PROVIDER?
LEHAN and ALTENBERND, JJ., concur.
NOTES
[1] A notice of intent to initiate litigation against a health care provider tolls the statute of limitations for a 90 day period. § 766.106(4), Fla. Stat. (1989).
[2] Actually Mrs. Harr acknowledged she first received notice of her son's death on October 6, 1986, not October 7, 1986, as stated in the final judgment.