IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

MOHAMAD R. SAMIIAN, M.D., individually and formally doing business as AESTHETIC AND PLASTIC SURGERY CLINIC OF JACKSONVILLE,

Appellants,

v.

FIRST PROFESSIONALS INSURANCE COMPANY, INC. and M. REZA SAMIIAN, M.D., P.A.,

Appellees.

_____/

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING AND DISPOSITION THEREOF IF FILED

CASE NO. 1D14-3656

Opinion filed December 1, 2015.

An appeal from the Circuit Court for Duval County.
W. Gregg McCaulie, Judge.

Louis K. Rosenbloum of Louis K. Rosenbloum, P.A., Pensacola; Michael S. Rywant of Rywant, Alvarez, Jones, Russo & Guyton, P.A., Gainesville; Robert J. Mayes and Jonathan R. Mayes of Mayes Law Firm, P.A., Gulf Breeze, for Appellant Mohamad R. Samiian, M.D.

Joseph T. Kissane and Daniel R. Duello of Cole, Scott & Kissane, P.A., Jacksonville; Raoul G. Cantero, David P. Draigh, and Ryan A. Ulloa of White & Case, LLP, Miami, for Appellee First Professionals Insurance Company, Inc.

BENTON, J.

Dr. Mohamad Samiian asks us to reverse the summary final judgment exonerating his medical malpractice insurer, First Professionals Insurance Company, Inc. (FPIC). The trial court ruled that Dr. Samiian's bad faith action against FPIC was barred by the "safe harbor" provision in section 766.1185(1)(a), Florida Statutes (2005). But, because subsection (2), not subsection (1)(a), controls, disputed issues of material fact precluding summary judgment remain. We reverse summary judgment, accordingly, and remand for further proceedings.

After Dr. Samiian performed liposuction on April 13, 2004, his patient remained in a bed on the clinic premises. At the end of the work day, Dr. Samiian left him in the care of a surgical technologist who administered medication intravenously. The patient suffered cardiac arrest and died at 8:40 p.m., despite the best efforts of the emergency medical technicians the technologist summoned. He left a wife and two minor children. The very next day Dr. Samiian notified FPIC of a potential malpractice claim.

On behalf of his widow, his children and the estate, pursuant to section 766.106(2), Florida Statutes (2003), the personal representative served a notice of intent to initiate medical negligence litigation on April 13, 2005. FPIC retained Bradley Johnson, Esq., to represent Dr. Samiian and conduct a presuit investigation. FPIC's claims adjuster, Eric Roberts, indicated in a June 30, 2005

2

note that the "case ha[d] become indefensible at least by post-op care" and "[w]e . . . have been unsuccessful in finding support [for] the overnight stay without an R.N. present. After discussions with [FPIC's] management, it was decided to not only offer the policy limits, but to tender them to the plaintiffs. . . . Settlement check is being requested. Plan to offer it prior to 7/14/05, end of presuit."[1] As planned, FPIC delivered a check in the amount of policy limits to the personal representative's attorney on July 11, 2005.[2]

---

[1] Section 766.106, Florida Statutes (2003), provides in part:

> (3) PRESUIT INVESTIGATION BY PROSPECTIVE DEFENDANT.—
> (a) No suit may be filed for a period of 90 days after notice is mailed to any prospective defendant. During the 90-day period, the prospective defendant or the defendant's insurer or self-insurer shall conduct a review . . . to determine the liability of the defendant. . . .
> (b) At or before the end of the 90 days, the prospective defendant or the prospective defendant's insurer or self-insurer shall provide the claimant with a response:
> 1. Rejecting the claim;
> 2. Making a settlement offer; or
> 3. Making an offer to arbitrate in which liability is deemed admitted and arbitration will be held only on the issue of damages. This offer may be made contingent upon a limit of general damages.

[2] On July 7, 2005 [prior to FPIC's tender of policy limits], Mr. Johnson sent an email to Mr. Roberts and to Fred Tromberg, Dr. Samiian's personal attorney, addressing whether to offer binding arbitration pursuant to section 766.207, Florida Statutes (2003). Attached to the email were drafts of two letters addressed to counsel for the estate – one offering binding arbitration and the other denying liability.

Two days later Mr. Johnson sent a letter to counsel for the personal representative, offering to submit the case to binding arbitration. While the letter made clear FPIC was not altering its outstanding offer to settle for policy limits, the offer to arbitrate changed the situation dramatically.[3] The offer to arbitrate was not contingent upon any limitation of damages. Confident any arbitration award would exceed the $250,000 policy limit tendered earlier, the personal representative accepted the offer to arbitrate.[4] In due course, an arbitration panel awarded the estate and survivors $35,315,789, and the award was affirmed on appeal on May 21, 2010. Samiian v. Gottlieb, 36 So. 3d 661 (Fla. 1st DCA 2010). Final judgment, including costs, attorney's fees and prejudgment interest on the arbitration award, was entered against Dr. Samiian for $43,347,183.28.

The present case began when Dr. Samiian and his professional association filed an action for damages against FPIC on August 12, 2010, alleging FPIC breached the insurance contract and acted in bad faith in handling the medical negligence claim against them. FPIC filed a motion for summary judgment, principally on two grounds: (1) because FPIC had tendered its policy limits promptly in response to the notice of intent to initiate a medical negligence action,

---

[3] When Dr. Samiian later questioned whether he was bound by the offer to arbitrate, the estate filed a motion to compel arbitration. The trial court granted the motion, and its ruling was affirmed. See Samiian v. Gottlieb, 958 So. 2d 926 (Fla. 1st DCA 2007).

[4] Mr. Johnson then withdrew from representation and FPIC retained Craig Dennis to represent Dr. Samiian.

4

any bad faith action was barred by virtue of the safe harbor provision in section

766.1185(1)(a)1., Florida Statutes (2005);[5] and (2) FPIC was not legally

---

[5] Section 766.1185, Florida Statutes (2005), provides, in relevant part:

Bad faith actions.—In all actions for bad faith against a medical malpractice insurer relating to professional liability insurance coverage for medical negligence, and in determining whether the insurer could and should have settled the claim within the policy limits had it acted fairly and honestly towards its insured with due regard for her or his interest, whether under statute or common law:

(1)(a)   An insurer shall not be held in bad faith for failure to pay its policy limits if it tenders its policy limits and meets other reasonable conditions of settlement by the earlier of either:

1.   The 210th day after service of the complaint in the medical negligence action upon the insured. . . .; or

2.   The 60th day after the conclusion of [specific depositions, initial disclosure of witness and document production, and mediation as provided in section 766.108, Florida Statutes].

. . . .

(d)   The fact that the insurer did not tender policy limits during the time periods specified in this paragraph is not presumptive evidence that the insurer acted in bad faith.

(2)   When subsection (1) does not apply, the trier of fact, in determining whether an insurer has acted in bad faith, shall consider:

(a)   The insurer's willingness to negotiate with the claimant in anticipation of settlement.

(b)   The propriety of the insurer's methods of investigating and evaluating the claim.

(c)   Whether the insurer timely informed the insured of an offer to settle within the limits of coverage, the right to retain personal counsel, and the risk of litigation.

responsible for the decision to offer to arbitrate the medical negligence claim, a decision which FPIC contended Dr. Samiian made in consultation with his legal team, independently of FPIC.

The trial court granted the motion for summary judgment on the first ground and entered final judgment in favor of FPIC, concluding that section 766.1185(1)(a) was "specifically designed and enacted to limit claims for insurer bad faith against medical malpractice carriers where the insurer's full policy limits were tendered within the safe harbor period." The trial court rejected Dr. Samiian's contention that his bad faith claim fell under section 766.1185(2), stating only: "If subsection (1) does apply, the Plaintiff does not have the ability to

---

  (d) Whether the insured denied liability or requested that the case be defended after the insurer fully advised the insured as to the facts and risks.

  (e) Whether the claimant imposed any condition, other than the tender of the policy limits, on the settlement of the claim.

  (f) Whether the claimant provided relevant information to the insurer on a timely basis.

  (g) Whether and when other defendants in the case settled or were dismissed from the case.

  (h) Whether there were multiple claimants seeking, in the aggregate, compensation in excess of policy limits from the defendant or the defendant's insurer.

  (i) Whether the insured misrepresented material facts to the insurer or made material omissions of fact to the insurer.

  (j) In addition to the foregoing, the court shall allow consideration of such additional factors as the court determines to be relevant.

(Boldface omitted).

6

recover for bad faith due to an improper method of investigating or evaluating the claim. Since the insurer tendered his policy limits within the safe harbor timeframe, subsection (1) applies." On the other hand, the trial court rejected FPIC's second ground, its argument that summary judgment was appropriate because Dr. Samiian and his attorneys, not FPIC, made the decision to offer to arbitrate, noting evidence that FPIC's claims adjuster participated in discussions with Dr. Samiian and his attorneys regarding whether to offer to arbitrate.

The record is clear that FPIC tendered its policy limits well before time had run under section 766.1185(1)(a), Florida Statutes (2005), and no party claims the tender was defective in any way. But section 766.1185(1)(a) does not bar an action for bad faith on any ground other than failure to settle promptly (before the deadline it specifies) when settlement is indicated. Where the insurer timely "tenders its policy limits and meets other reasonable conditions of settlement," subsection (1)(a) bars only an action against an insurer for "bad faith for failure to pay its policy limits."

Dr. Samiian's bad faith claim did not allege FPIC's failure to pay or tender its policy limits. The complaint contends instead that FPIC breached duties owed him and his professional association and acted in bad faith in making an offer to arbitrate which entailed admitting liability, without making the offer "contingent upon a limit of general damages." § 766.106(3)(b)3., Fla. Stat. (2003). The

complaint asserts that the deceased patient earned over $2,000,000 a year and that admitting liability for economic damages (by offering to arbitrate) could not possibly have been in Dr. Samiian's best interest. The complaint also maintains that FPIC's employees and agents breached a duty they owed to advise him fully of the consequences of admitting legal liability, including waiving any defense of proximate cause or third parties' comparative negligence, and that FPIC failed to recognize that the patient's claim was defensible (or at least that damages could be reduced by apportioning fault to the patient or to third parties). Dr. Samiian also claimed FPIC acted in its own best interest,[6] not his, by offering to submit the claim to binding arbitration, thereby limiting its exposure to attorney's fees and costs that it would have incurred if the claim had gone to trial and liability had been litigated.

The bad faith action Dr. Samiian and his professional association pleaded falls under section 766.1185(2), Florida Statutes (2005), which specifies ten factors that must be considered on the question of bad faith, where section 766.1185(1) does not apply. The trial court erred in entering summary final judgment in favor of FPIC on the purported authority of section 766.1185(1)(a), Florida Statutes (2005). Based on the "pleadings and summary judgment evidence on file," Fla. R.

---

[6] Section 627.4147(1)(b)1., Florida Statutes (2005), requires that "any offer of admission of liability, settlement offer, or offer of judgment made by an insurer or self-insurer shall be made in good faith and in the best interests of the insured."

Civ. P. 1.510(c), the safe harbor provision in section 766.1185(1)(a) does not apply in the present case. Whether FPIC acted in bad faith as alleged in the complaint depends on numerous factual questions that cannot, on this record, be resolved by summary judgment.

Summary judgment may not be granted "[i]f there is even the slightest doubt that material factual issues remain." Alpha Data Corp. v. HX5, L.L.C., 139 So. 3d 907, 910 (Fla. 1st DCA 2013). See Feizi v. Dep't of Mgmt. Servs., State of Fla., 988 So. 2d 1192, 1193 (Fla. 1st DCA 2008) ("'If the evidence raises any issue of material fact, if it is conflicting, if it will permit different reasonable inferences, or if it tends to prove the issues, it should be submitted to the jury as a question of fact to be determined by it.'" (quoting Moore v. Morris, 475 So. 2d 666, 668 (Fla.1985))); see also Fla. R. Civ. P. 1.510(c) ("The [summary] judgment sought shall be rendered forthwith if the pleadings and summary judgment evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."). We review orders granting summary judgment de novo. See Dianne v. Wingate, 84 So. 3d 427, 429 (Fla. 1st DCA 2012). "Our task is to determine whether, after reviewing every inference in favor of [a]ppellants as the non-moving party, no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law." Id.

We decline FPIC's suggestion that we affirm on the second ground it argued

9

below—the ground the trial court rejected—under the "tipsy coachman" doctrine. See Dade Cty. Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638, 644-45 (Fla. 1999) (holding that, although arrived at by erroneous reasoning, a decision may be affirmed if the evidence supports it on an alternative theory). Even summary judgment can be affirmed, if right for the wrong reason, where the right reason was adequately presented to the trial court in support of the motion. Cf. Hope v. Citizens Prop. Ins. Corp., 114 So. 3d 457, 459 (Fla. 3d DCA 2013) ("'[A]s Loranger v. State Dep't of Transp., 448 So. 2d 1036, 1039 (Fla. 4th DCA 1983) makes clear, the "right for the wrong reason" appellate maxim does not apply in summary judgment proceedings where the issue was never raised in the motion for summary judgment.'" (citation omitted)).

But, with regard to the second ground FPIC argued in support of its motion for summary judgment,[7] the trial court rightly identified "whether or not it [the decision to offer to arbitrate] was Dr. Samiian's unilateral decision or not" as a

---

[7] FPIC argues it is not liable for any legal malpractice on the part of Mr. Johnson regarding the decision to offer to arbitrate. See Zurich Am. Ins. Co. v. Frankel Enters., 287 F. App'x 775, 779 (11th Cir. 2008) ("Under Florida law, any defense counsel hired to represent the insured is an independent contractor, and the insurer is not vicariously liable for counsel's acts and omissions."); Marlin v. State Farm Mut. Auto. Ins. Co., 761 So. 2d 380, 381 (Fla. 4th DCA 2000) (concluding that because "the insurer has no obligation or right to supervise or control the professional conduct of the attorney, it is not liable for the litigation decisions of counsel"); Aetna Cas. & Sur. Co. v. Protective Nat'l Ins. Co. of Omaha, 631 So. 2d 305, 306 (Fla. 3d DCA 1993) (holding "an insurance company is not vicariously liable for the malpractice of the attorney it selects to defend the insured").

material factual issue, and concluded it could not resolve factual disputes on motion for summary judgment. The learned trial judge was aware of evidence from which a jury could find that Mr. Roberts, FPIC's claims adjuster, participated with Dr. Samiian, Mr. Johnson, and another lawyer, Mr. Tromberg, in deciding to offer to arbitrate.[8] If FPIC is legally responsible for the offer to arbitrate—a question we do not decide—there are also material issues of disputed fact regarding whether the offer to arbitrate was in the best interest of Dr. Samiian, and whether waiving all defenses to liability while an offer to settle for policy limits was pending served his, as opposed to the insurer's, interests.

Reversed and remanded.

ROWE and MARSTILLER, JJ., CONCUR.

---

[8] We reject Dr. Samiian's assertion that pursuant to section 627.4147, Florida Statutes (2005), the insurer retains exclusive control over the decision whether to admit liability and offer arbitration. See §§ 627.4147(1); (1)(b)1., Fla. Stat. (2005) ("[E]ach . . . insurance policy providing coverage for claims arising out of the rendering of, or the failure to render, medical care or services, . . . shall include" "a clause authorizing the insurer or self-insurer to determine, to make, and to conclude, without the permission of the insured, any offer of admission of liability and for arbitration pursuant to s. 766.106, settlement offer, or offer of judgment, if the offer is within the policy limits. It is against public policy for any insurance or self-insurance policy to contain a clause giving the insured the exclusive right to veto any offer for admission of liability and for arbitration made pursuant to s. 766.106, settlement offer, or offer of judgment, when such offer is within the policy limits." (emphasis added)). The offer to arbitrate in this case was not "within the policy limits."

11