602 So.2d 596 (1992)
Terry ARTHUR, as Personal Representative of the Estates of John Arthur, deceased, and Rebecca Arthur, deceased, Appellant,
v.
UNICARE HEALTH FACILITIES, INC., d/b/a Greenbrook Nursing Center, and Malcolm R. Fraser, M.D., Appellees.
No. 91-01309.
District Court of Appeal of Florida, Second District.
June 19, 1992.
Rehearing Denied August 13, 1992.
*597 Kevin A. McLean of McLean & Schecht, P.A., Tampa, for appellant.
Jon C. Kieffer of Kieffer & Rahter, P.A., St. Petersburg, for appellee Unicare Health Facilities, Inc.
Jeffrey P. Winkler, Charles W. Hall, and Donald V. Bulleit of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., St. Petersburg, for appellee Malcolm R. Fraser, M.D.
PATTERSON, Judge.
Terry Arthur, personal representative of the estates of John Arthur and Rebecca Arthur, appeals the trial court's order granting summary final judgment to defendants Unicare Health Facilities, Inc., d/b/a *598 Greenbrook Nursing Center (the nursing home) and Malcolm R. Fraser, M.D. We reverse.
The plaintiff's fifth amended complaint alleges that while decedent John Arthur was a resident in the nursing home, the defendants' negligence caused John Arthur to develop decubitus ulcers, resulting in infection and amputation of a leg. The ulcers allegedly developed from January through April 1987. John Arthur was removed from the nursing home on April 14, 1987. His leg was amputated on October 4, 1987, and he died on October 30, 1987. Dr. Fraser is alleged to have treated John Arthur throughout this period.
The fifth amended complaint contains counts against each defendant for both wrongful death and personal injury. That is, the complaint alleges both that the defendants' negligence caused John Arthur's injuries and resulting death and, alternatively, that their negligence caused his injuries but that he died from other causes.[1]
The trial court granted summary judgment to each defendant on statute of limitations grounds. Terry Arthur, the personal representative and the decedent's son, knew of the decubitus ulcers in March 1987. The court found that at that time Terry Arthur had his father's durable family power of attorney which would have allowed him to bring a legal action on his father's behalf. The court applied the two-year medical malpractice statute of limitation to both defendants after deciding that the nursing home was a health care provider. The court found that the limitations period, including the stays allowed pursuant to sections 768.495 and 768.57, Florida Statutes (1987)[2], expired on October 11, 1989. This lawsuit was filed on October 30, 1989. Thus, the court granted summary judgment to both defendants on the basis that the statute of limitations had run before the lawsuit was filed.
We find that summary judgment was improper as to each defendant, for different reasons. As to the doctor, the statute of limitations applicable to the claim for personal injuries not resulting in death is the medical malpractice statute. That same statute also controls the wrongful death claim. Ash v. Stella, 457 So.2d 1377 (Fla. 1984).
Thus, for either the personal injury claim or the wrongful death claim asserted against the doctor, the relevant statute of limitations is the two-year medical malpractice statute. § 95.11(4)(b), Fla. Stat. (1987). That limitations period began to run when the injured party, John Arthur, knew or should have known of his injuries or the alleged negligence. University of Miami v. Bogorff, 583 So.2d 1000 (Fla. 1991). This concept is generally denoted as the "discovery rule"[3] which tolls the beginning of the running of the statute of limitations. See Johnson v. Szymanski, 368 So.2d 370 (Fla. 2d DCA), cert. denied, 378 So.2d 350 (Fla. 1979). Under the Bogorff interpretation of the discovery rule, notice of possible malpractice is imputed to the injured person "when the plaintiff should have known of either (1) the injury or (2) the negligent act." Bogorff, 583 So.2d at 1002. Clearly the initial injury in this case, the decubitus ulcers, occurred prior to Arthur's removal *599 from the nursing home to the hospital on April 14, 1987, and is an obvious and painful condition of which an ordinary person would be aware. Applying the strict Bogorff standard to these facts would facially impute notice of possible malpractice to Arthur on or before that date.
This case, however, presents a factual setting which is yet to be addressed by a Florida court. John Arthur was blind and deaf. In addition, the record supports the conclusion that he was senile and out of touch with both his surroundings and reality.[4] The question thus becomes: Does the Bogorff standard impute notice of possible malpractice to an individual who has little or no conscious awareness of his condition or the acts or omissions of those attending him? We do not believe that it does. In arriving at this determination, we look to the accepted definition of the term "knows": "to apprehend immediately with the mind or with the senses: perceive directly: have direct unambiguous cognition of." Webster's Third New International Dictionary 1252 (1961). This definition is in turn incorporated into the definition of the term "discover": "to make known (something secret, hidden, unknown, or previously unnoticed)." Webster's Third New International Dictionary 647 (1961). In matters of statutory construction, words are to be given their clear and unambiguous meaning and it is to be assumed that the legislature is cognizant of the meaning of the words it chooses. Silva v. Southwest Fla. Blood Bank, Inc., 601 So.2d 1184 (Fla. 1992); Sheffield v. Davis, 562 So.2d 384, 386 (Fla. 2d DCA 1990).
In choosing the words "from the time the incident is discovered, or should have been discovered" in section 95.11(4)(b), Florida Statutes (1987), we conclude that the legislature anticipated and intended an ability of conscious awareness on the part of a victim of alleged malpractice to trigger the statute running. This case presents the factual issue of John Arthur's capacity to perceive an incident or act of negligence which would commence the statute of limitations, thereby precluding a summary judgment on that issue.
The trial court determined that the limitations period began to run when Terry Arthur knew of his father's injuries, because Terry Arthur had a power of attorney which would have allowed him to bring suit. We cannot agree. John Arthur had not been declared incompetent nor had Terry Arthur been appointed his guardian. Thus, this case is not identical to cases in which the limitations period for a child begins to run when the child's parents (natural guardians) know of the child's injuries. In the case of parents and guardians, there exists a legal right and duty to protect their wards and children's well-being and rights. See Clifford v. United States, 738 F.2d 977 (8th Cir.1984). In regard to an emancipated adult, friends and family have no corollary duty and, therefore, notice of possible malpractice to them cannot be imputed to the adult. Clifford, 738 F.2d at 979. We cannot conclude that the existence of a durable family power of attorney in the hands of Terry Arthur alters this rule. Section 709.08, Florida Statutes (1987), which provides for the granting of such a power of attorney, is specific as to what the holder of such a power cannot do, but is not specific as to what such person can do. See In re Estate of Schriver, 441 So.2d 1105 (Fla. 5th DCA 1983). We have found no authority which supports the right of such a holder to institute a suit for personal injuries on behalf of the grantor. If we were to construe section 709.08 to contain such a grant of authority, the statute cannot be construed to impose a duty upon the holder to do so. Absent such a duty, notice of possible malpractice cannot be imputed to Terry Arthur. Since factual issues remain unresolved concerning when *600 the cause of action against the doctor accrued, summary judgment on those claims was improper.
As to the nursing home, the two-year medical malpractice statute of limitations does not apply because a nursing home is not a health care provider. See NME Properties, Inc. v. McCullough, 590 So.2d 439 (Fla. 2d DCA 1991).[5] The relevant statutes of limitation for the nursing home are two years on the wrongful death claim, accruing as of John Arthur's date of death, and four years on the personal injury (negligence) claim. Under the facts of this case, neither limitations period had expired at the time this lawsuit was filed. Thus, summary judgment for the nursing home was improper.
The dissent correctly observes that the counts of the amended complaint against the nursing home are couched in the terms of an action for malpractice of a health care provider. This, however, is not a fatal or controlling defect in that those counts may be amended as necessary to clarify the basis for the action. See Williams v. Bay Hosp., Inc., 471 So.2d 626, 629 (Fla. 1st DCA 1985).
Reversed and remanded for proceedings consistent with this opinion.
FRANK, J., concurs.
RYDER, A.C.J., concurs in part and dissents in part.
RYDER, Acting Chief Judge, concurs in part and dissents in part.
I agree that the statute of limitations did not run as to Counts I and III of the Fifth Amended Complaint, the wrongful death and medical malpractice claims against Greenbrook Nursing Center and Malcolm Fraser, M.D. In so concluding, I adopt the majority's reasoning that in construing section 95.11(4)(b), Florida Statutes (1989), the legislature intended an ability of conscious awareness on the part of a victim[6] of alleged malpractice to trigger the running of the statute of limitation. Thus, I conclude that the statute of limitations did not run as to the wrongful death action against Greenbrook Nursing Center, and the cause of action separately pleaded as Count II against the nursing home is sufficient to entitle the plaintiff, if he prevails, to damages under section 400.023, Florida Statutes (1989).
However, I cannot agree that it is a clear-cut proposition that a nursing home is not subject to the requirements of Chapter 766 where the plaintiff alleges that health care providers acting as agents of the nursing home negligently breached the professional medical negligence standard of care in providing professional nursing care and treatment. Our opinion in NME Properties, Inc. v. McCullough, 590 So.2d 439 (Fla. 2d DCA 1991) involved a factual situation where no allegation was made concerning the rendering of medical care or service.
NOTES
[1] The Wrongful Death Act, sections 768.16-768.27, Florida Statutes (1987), eliminates claims for pain and suffering when death results from the complained of injuries. When death results from an independent cause, such a claim is preserved by the survival of actions statute, section 46.021, Florida Statutes (1987). See Williams v. Bay Hosp., Inc., 471 So.2d 626 (Fla. 1st DCA 1985).
[2] Renumbered as sections 766.104 and 766.106, Florida Statutes (1991).
[3] The discovery rule is also found in sections: 95.031(2) (products liability and fraud); 95.11(3)(c) (latent defects in improvements to real property); 95.11(4)(a) (professional malpractice other than medical malpractice); 95.11(4)(e) (an action founded upon a violation of chapter 517); and 95.11(4)(f) (an action for personal injury caused by contact or exposure to phenoxy herbicides), Florida Statutes (1987), and is not limited or controlled by section 95.051, Florida Statutes (1987) (when limitations tolled).

For an analysis of the application of the discovery rule in medical malpractice cases, see Rogers v. Ruiz, 594 So.2d 756 (Fla. 2d DCA 1991); Harr v. Hillsborough Community Mental Health Center, 591 So.2d 1051 (Fla. 2d DCA 1991); and Goodlet v. Steckler, 586 So.2d 74 (Fla. 2d DCA 1991).
[4] We have been unable to discover a case which deals with a condition factually similar to the condition of John Arthur. Other courts, however, in somewhat similar situations have held that notice is not to be imputed to an individual lacking conscious awareness. See Washington v. United States, 769 F.2d 1436 (9th Cir.1985); Zeidler v. United States, 601 F.2d 527 (10th Cir.1979); Riley v. Presnell, 409 Mass. 239, 565 N.E.2d 780 (1991); Seymour v. Lofgreen, 209 Kan. 72, 495 P.2d 969 (1972).
[5] An employer, whose liability is strictly vicarious, can enjoy the benefits of the medical malpractice statute of limitations if liability is predicated solely upon the acts of a professional employee who has the benefit of the statute. Sheils v. Jack Eckerd Corp., 560 So.2d 361 (Fla. 2d DCA 1990). We do not address this issue as it applies to the facts of this case, nor the question of whether such benefit can accrue to an employer when its liability rests on a mixture of acts performed by professional and nonprofessional employees, because the matter was not presented before the trial court.
[6] To me, however, "victim" includes someone or entity who has legal standing to act on behalf of the victim.