982 So.2d 64 (2008)
Sarah THOMAS, as Plenary Guardian, etc., Appellant,
v.
Fernando LOPEZ, M.D., et al., Appellee.
No. 5D07-349.
District Court of Appeal of Florida, Fifth District.
April 18, 2008.
Rehearing Denied May 21, 2008.
*65 Julie H. Littky-Rubin, of Lytal, Reiter, Clark, Fountain & Williams, LLP, West Palm Beach, for Appellant.
Michael R. D'Lugo and Richards H. Ford, of Wicker, Smith, O'Hara, McCoy & Ford, P.A., Orlando, for Appellees, Fernando Lopez, M.D. and Waterford Lakes Women's Health Center.
Rafael E. Martinez and Ruth C. Osborne, of McEwan, Martinez & Dukes, P.A., Orlando, for Appellees, Armando Fuentes, M.D., and Armando Fuentes M.D., P.A., d/b/a Maternal Fetal Center.
Mason H. Grower, III and Philip J. Wallace, of Grower, Ketcham, Rutherford, Bronson, Eide & Telan, P.A., Orlando, for Appellee, The Adventist Health Systems/Sunbelt, Inc., d/b/a Winter Park Memorial Hospital.
ORFINGER, J.
Sarah Thomas ("Mrs.Thomas"), as plenary guardian of her adult daughter, Tammy Thomas ("Tammy"),[1] appeals the final summary judgment entered in favor of Fernando Lopez, M.D., Waterford Lakes Women's Health Center, Inc., Armando Fuentes, M.D., d/b/a Maternal Fetal Center, and the Adventist Health Systems/Sunbelt, Inc., d/b/a Winter Park Memorial Hospital, Orlando (collectively, "the Health Care Providers"). Mrs. Thomas argues that the trial court erred by concluding that Tammy's negligence claim against the Health Care Providers was barred as a matter of law by the statute of limitations. We agree and reverse.
When she was twenty-eight-weeks pregnant, Tammy began seeing Dr. Lopez as a pre-natal patient with chronic hypertension. Dr. Lopez tried to control Tammy's blood pressure with medication and strict bed rest, but achieved only limited success. Due to continuing problems with her blood *66 pressure, Dr. Lopez admitted Tammy to Winter Park Memorial Hospital for a consultation with Dr. Fuentes. Tammy was discharged from the hospital the next day. Several weeks later, on March 31, 2003, Dr. Lopez performed an amniocentesis on Tammy to establish fetal lung maturity. The procedure was unsuccessful, and shortly thereafter, Tammy became short of breath, nauseated, experienced abnormally fast breathing, and began to vomit. Tammy was immediately transferred to Winter Park Memorial Hospital, where she went into cardiac and respiratory arrest, ultimately resulting in brain injury and mental incapacitation. Fortunately, Dr. Lopez was able to safely deliver Tammy's baby that same day. Two days later, Mrs. Thomas met Dr. Lopez for the first time. Mrs. Thomas told Dr. Lopez that she felt he had failed Tammy because she believed that due to Tammy's high blood pressure, he should have induced labor much earlier.
Almost nine months later, on December 31, 2003, Mrs. Thomas was appointed to serve as Tammy's plenary guardian. Thereafter, no record activity occurred until March 2, 2005, when Mrs. Thomas filed a petition pursuant to section 766.104, Florida Statutes (2003), for an automatic 90-day extension of the statute of limitations and repose as to all the health care providers who had rendered treatment to Tammy. Then, on August 10, 2005, Mrs. Thomas served notices of intent to initiate medical malpractice litigation against Dr. Lopez, Dr. Fuentes, and Winter Park Hospital. On February 1, 2006, Mrs. Thomas filed a complaint for medical negligence against the Health Care Providers.
After answering the complaint, the Health Care Providers filed motions for summary judgment. Each argued that Tammy's claim was barred by the statute of limitations. The Health Care Providers maintained that the statutes of limitations began to run either on March 31, 2003, when Tammy sustained her injuries, or April 2, 2003, when Mrs. Thomas confronted Dr. Lopez with her suspicions of medical negligence. Mrs. Thomas filed a response and cross-motion for summary judgment, contending that she had no duty or legal authority to bring a medical malpractice claim on behalf of her daughter until December 31, 2003, when she was appointed plenary guardian. After a hearing, the trial court granted the Health Care Providers' motions for summary judgment and denied Mrs. Thomas's motion. The court concluded that the claim was untimely because the limitations period "commenced when [Mrs. Thomas] was aware of [Tammy's] injury and the reasonable possibility that it was caused by medical negligence." This appeal followed.
We review an order granting summary judgment de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). A court may grant summary judgment only "if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law." Id. (citing Menendez v. Palms W. Condo. Ass'n, 736 So.2d 58 (Fla. 1st DCA 1999)).
As she did below, Mrs. Thomas argues that the statute of limitations on Tammy's medical malpractice claim against the Health Care Providers began to run no earlier than when she was appointed Tammy's plenary guardian. If she is correct, the complaint was timely filed due to the various tolling provisions found in chapter 766, Florida Statutes.[2] Section 95.11(4)(b), Florida Statutes, establishing a two-year *67 limitations period for medical malpractice actions, provides:
An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence; however, in no event shall the action be commenced later than 4 years from the date of the incident or occurrence out of which the cause of action accrued. . . .
§ 95.11(4)(b), Fla. Stat. (2003). This statute has led to considerable uncertainty concerning what constitutes discovery of the incident of negligence. In Tanner v. Hartog, 618 So.2d 177, 181 (Fla.1993), the supreme court interpreted this section to mean that in order to trigger the start of the statute of limitations in a medical malpractice case, there must be not only knowledge of the injury, but also knowledge of the reasonable possibility that the injury was caused by medical malpractice.[3]
To determine when the limitations period expired, we must know when it began. In this case, that determination depends entirely on when Tammy's cause of action accrued, as that is what causes the limitations period to commence. The principle that a plaintiff should be put on notice of the cause of action before his or her claim may be considered to have accrued for statute of limitations purposes is generally referred to as the "discovery rule" or the "delayed discovery doctrine." 35 Fla. Jur.2d Limitations and Laches § 58 (2008). The discovery rule delays the accrual of a cause of action until the happening of an event likely to put the plaintiff on notice of the existence of a cause of action. Eagle-Picher Indus., Inc. v. Cox, 481 So.2d 517 (Fla. 3d DCA 1985). Put another way, the cause of action accrues when the plaintiff knows, or through the exercise of reasonable diligence, should have known of the reasonable possibility that an injury was caused by medical malpractice. Tanner, 618 So.2d at 181; Keller v. Reed, 603 So.2d 717, 719 (Fla. 2d DCA 1992).
Section 95.11(4)(b), codifying the discovery rule in Florida, establishes both a subjective component, what the plaintiff actually knew, and an objective component, what an objectively reasonable plaintiff should have discovered with the exercise of due diligence. A plaintiff's cause of action accrues when either component of the discovery rule is satisfied. We examine each component in turn.
It is undisputed that as a consequence of the significant brain damage she suffered following her amniocentesis, Tammy had no knowledge of her injury or that there was a reasonable possibility that her injury was caused by medical malpractice. As a result, Tammy never had sufficient actual notice to trigger the start of the statute of limitations. Still, the Health Care Providers argue that Mrs. Thomas's knowledge of the possibility that medical malpractice caused Tammy's injuries is imputed to Tammy, so that the statute of limitations accrued on March 31, 2003, the date of the injury, or on April 2, 2003, the day that Mrs. Thomas confronted Dr. Lopez.
*68 Two cases have considered facts similar to this case. In Arthur v. Unicare Health Facilities, Inc., 602 So.2d 596 (Fla. 2d DCA 1992), a senile, blind, and deaf man, suffered injuries from January through April 1987, as a result of nursing home negligence, ultimately leading to his death in October 1987. The victim's son filed a lawsuit against the nursing home and the treating doctor in October 1989. The trial court concluded that the son knew of the injuries in March 1987 and could have brought an action at that time because he held his father's durable power of attorney. The trial court granted summary judgment in favor of the nursing home operators on the basis that the son's complaint was barred by the statute of limitations. The Second District reversed, holding that knowledge of possible malpractice by a family member or friend is not imputed to a person, such as the victim, who has little or no conscious awareness of his condition. Id. at 599. Further, the son's power of attorney did not entitle him to bring a lawsuit on his father's behalf, as his father had neither been declared incompetent nor had the son been appointed his guardian. Id. The Fourth District adopted a similar approach in Stone v. Rosenthal, 665 So.2d 276 (Fla. 4th DCA 1995), holding that "the friends and family of an emancipated adult have no duty to institute suit on the adult's cause of action." Id. at 278.
We agree with the holdings of Arthur and Stone. At the time of her injury, Tammy was an emancipated adult. Mrs. Thomas had no right or duty to institute suit on Tammy's cause of action. We cannot conclude that the family or friends of an injured incapacitated party have the right or duty to file suit regarding an emancipated adult's cause of action.
Having determined that Tammy's cause of action did not accrue based on any knowledge that she possessed, and that Mrs. Thomas's knowledge is not imputed to Tammy, at least until her appointment as plenary guardian, we turn to the objective component of the discovery rule. That component asks what the objectively reasonable person, in the tort claimant's position, should have discovered with the exercise of due diligence. See Drazan v. United States, 762 F.2d 56, 59 (7th Cir. 1985). The determination of when a person knew or reasonably should have known with the exercise of due diligence of the possibility of medical negligence is generally a question of fact. See generally Keller, 603 So.2d 717. It requires a determination of when the injured party, or his or her representative, became possessed of sufficient information concerning the injury and its cause to prompt a reasonable person to inquire further to determine if actionable conduct is involved. Simply suspecting wrongdoing is not enough. Tanner, 618 So.2d at 181; Young v. McKiegue, 303 Ill.App.3d 380, 236 Ill.Dec. 907, 708 N.E.2d 493 (1999). The statute of limitations should not be construed to compel one who knows of an injury, or an adverse outcome following a medical procedure, to scour the medical records, in the off chance that the health care provider did something wrong. Nemmers v. United States, 795 F.2d 628, 631 (7th Cir.1986). The Health Care Providers concede that "reasonable people could disagree about whether [Tammy's] injuries in and of themselves would put a potential medical malpractice claimant on notice of the existence of a claim for medical negligence." Consequently, summary judgment was improper as there is a question of fact as to the date on which Tammy's representative, Mrs. Thomas, should have known with the exercise of reasonable diligence of the possibility of medical negligence.
*69 An exception to the discovery rule also supports reversal of the summary judgment. If, as a result of the occurrence giving rise to a cause of action, an injured person becomes mentally incapacitated so as to be incapable of acting for himself or herself in prosecuting a claim and a guardian is not appointed, under the discovery rule, the accrual of the cause of action is delayed.[4] A defendant "should not benefit when the defendant's wrongful conduct causes a mental condition which results in the plaintiff's delay in filing suit." Yusuf Mohamad Excavation, Inc. v. Ringhaver Equip., Co., 793 So.2d 1127, 1129 (Fla. 5th DCA 2001) (holding that cause of action does not accrue against mentally incapacitated plaintiff when defendant's tortuous acts caused the delay in discovering cause of action), approved by Davis v. Monahan, 832 So.2d 708, 712 (Fla.2002); see also Camps v. City of Warner Robins, 822 F.Supp. 724 (M.D.Ga. 1993) (applying Georgia law).
Finally, the Health Care Providers argue that Mrs. Thomas's claim is also barred by section 744.394, Florida Statutes (2003). That statute allows a guardian to bring an action on behalf of an incapacitated person after the limitations period has expired if (1) the incapacitated person was adjudicated incapacitated before expiration of the period of limitations, and (2) the action is commenced within one year from the date of the order appointing the guardian or the time otherwise limited by law, whichever is longer. By its own terms, the statute requires a determination of when the cause of action accrued, as it only applies after the limitations period has expired. Because this is inherently a question of fact, it is generally incapable of resolution by summary judgment.
For these reasons, we reverse the summary judgment in favor of the Health Care Providers and remand this matter for further proceedings consistent with this opinion.
REVERSED and REMANDED.
TORPY and LAWSON, JJ., concur.
NOTES
[1] This Court generally refers to parties by their surnames. Here, because Sarah Thomas and Tammy Thomas share the same surname, to avoid confusion, we refer to Tammy Thomas as "Tammy" throughout the opinion.
[2] For a comprehensive discussion of how these provisions interact, see Hankey v. Yarian, 755 So.2d 93 (Fla.2000), and Thomas D. Sawaya, Personal Injury Law and Practice with Wrongful Death Action, § 12.23 (2008 ed.).
[3] The supreme court also explained in Tanner:

The nature of the injury, standing alone, may be such that it communicates the possibility of medical negligence, in which event the statute of limitations will immediately begin to run upon discovery of the injury itself. On the other hand, if the injury is such that it is likely to have occurred from natural causes, the statute will not begin to run until such time as there is reason to believe that medical malpractice may possibly have occurred.
618 So.2d at 181-82.
[4] The delayed discovery doctrine does not effect a statute of repose, except as specifically authorized by law.