DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PAMELA BARRIER,** as Guardian of the Person and Property of **CHAD A. BARRIER,**
Appellant,

v.

**JFK MEDICAL CENTER LIMITED PARTNERSHIP,** d/b/a **JFK MEDICAL CENTER, PALM BEACH EMERGENCY MEDICAL ASSOCIATES, P.L.,** a limited liability corporation, **JASON SEVALD, M.D., ARMOR CORRECTIONAL HEALTH SERVICES, INC.,** a Florida corporation, **TANYA BEAUMONT, L.P.N., SHARA DAVIS, L.P.N., PATRICIA SALMON, L.P.N., GARRY J. BEAUZILE, M.D.,** and **PIERRE DORSAINVIL, M.D.,**
Appellees.

No. 4D13-3041

[June 17, 2015]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Jack S. Cox, Judge; L.T. Case No. 502012CA022822XXXXMB.

Howard S. Grossman and Michael J. Ferrin of Grossman Attorneys at Law, Boca Raton, and Joel S. Perwin of Joel S. Perwin, P.A., Miami, for appellant.

Dinah Stein, Mark Hicks, Jedidiah Vander Klok, and Erik Bartenhagen of Hicks, Porter, Ebenfeld & Stein, P.A., Miami, and Howard Citron of Billing, Cochran, Lyles, Mauro & Ramsey, P.A., West Palm Beach, for appellee JFK Medical Center Limited Partnership.

Debra Potter Klauber, James S. Haliczer and Renee L. Brant of Haliczer, Pettis & Schwamm, Fort Lauderdale, for appellees Jason Sevald, M.D. and Palm Beach Emergency Medical Associates, P.L.

Christopher J. Bailey and Elizabeth Russo of Russo Appellate Firm, P.A., Miami, and Michaud, Mittelmark, Marowitz & Asrani, PLCC, Boca Raton, for appellees Armor Correctional Health Services, Inc., Tanya Beaumont, L.P.N., Shara Davis, L.P.N., Patricia Salmon, L.P.N., Garry J. Beauzile, M.D. and Pierre Dorsainvil, M.D.

WARNER, J.

Appellant Pamela Barrier, as guardian of her incapacitated son Chad Barrier, filed a medical malpractice claim on his behalf. The trial court granted summary judgment for the defendants based on the statute of limitations. It determined that the statute ran from the time appellant was appointed emergency temporary guardian and had knowledge of the possibility of medical malpractice. We hold that the knowledge of appellant, if any, of possible malpractice, may not be imputed to her son until he is determined to be incapacitated and she is appointed permanent guardian of his property. We thus reverse.

In February 2010, Chad was transported to JFK Medical Center ("the Hospital") from a substance abuse treatment facility based on reports that he had attempted to commit suicide by taking an overdose of Xanax. He was discharged from the Hospital less than ten hours later. About nine hours after his discharge, the same substance abuse treatment facility called 911 to report that Chad had reported there in a lethargic state and eventually become unresponsive. Chad was returned to the Hospital, where an Atlantis Police Department officer discovered drugs in his possession. He was discharged from the Hospital within two hours of his arrival, into the custody of the Atlantis Police Department. Later that same day, at the Palm Beach County Main Detention Center, Chad suffered cardiac arrest as a result of the drug overdose. He went into a coma from which he has not emerged.

Appellant petitioned to be appointed emergency temporary guardian ("ETG") of Chad's person and property. She alleged Chad had not regained consciousness after suffering cardiac arrest and was "in need of an emergency guardian to make medical decisions for him, to handle his insurance claims and to otherwise manage his medical and financial affairs." On April 13, 2010, the probate court appointed her ETG and issued letters of guardianship granting her

> [A]ll powers and duties given to a plenary guardian of the person and property, including but not limited to authority to consent to medical treatment for the ward and to demand, obtain, review and release to others the medical records of the ward.

The letters of guardianship provided that her authority expired in sixty days. On May 19, 2010, before the temporary guardianship expired, Chad was determined to be incompetent, and appellant was appointed Chad's plenary guardian of his person and property.

2

On July 19, 2012, after having received the ninety-day extension of the statute of limitations under section 766.104(2), Florida Statutes, appellant served notices of intent to initiate litigation for medical malpractice on appellees. She followed up by filing a complaint for medical negligence, alleging that both the Hospital and the medical personnel at the jail ("Armor defendants") were negligent in their care and treatment of Chad, leading to his cardiac arrest and incapacity. The defendants all answered and alleged that the statute of limitations had run on the causes of action. They alleged that appellant would have learned of their medical negligence on the date of the incident, because Chad was an otherwise healthy individual, and his sudden pulmonary arrest and brain injury cannot be considered "likely to have occurred from natural causes." They argued appellant's knowledge was imputed to Chad when appellant was appointed Chad's ETG on April 13, 2010, thereby triggering the statute of limitations.

Appellant filed a response. She argued her appointment as ETG did not impose a duty to file a malpractice suit, which duty arose only after she was appointed plenary guardian on May 19, 2010. Thus, according to appellant, the statute of limitations did not run out until August 17, 2012, making her notices timely. Additionally, she argued there were disputes of material fact as to whether she had sufficient notice to trigger the statute of limitations.[1]

The court granted summary judgment for appellees. It found that, upon her appointment as Chad's ETG, appellant had a duty to investigate a possible medical malpractice claim on his behalf. The court reasoned that the April order appointing her ETG specifically indicated it was imposing the duties of a plenary guardian. The court determined that appellant's knowledge of the injury itself was sufficient to trigger the statute of limitations as of the date of her appointment as ETG, attributing to her knowledge contained in the medical records. This appeal follows.

The main issue in this appeal is whether appellant's appointment as ETG created a legal duty towards Chad such that any knowledge of malpractice appellant may have acquired could be imputed to her son and thus trigger the commencement of the statute of limitations. We hold that appellant's knowledge, if any, of the possibility of medical negligence could not be imputed to the ward for purposes of the running of the statute of

---

[1] We omit any discussion of the merits of the medical malpractice claim itself, or whether there was sufficient evidence that appellant had subjective knowledge of the possibility of medical malpractice. Those issues are not relevant in this appeal due to our conclusion that the statute of limitations could not commence running prior to appellant's appointment as plenary guardian of her son.

limitations during the period of her appointment as ETG.  Such imputation of knowledge could not occur until the ward was declared incompetent and a permanent guardian of the property was appointed.  Running the statute of limitations from the date of appellant's appointment as permanent guardian, the notices of intent to initiate medical malpractice litigation were timely served.

"An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence . . . ."  § 95.11(4)(b), Fla. Stat. (2010).

In *Tanner v. Hartog*, 618 So. 2d 177 (Fla. 1993), our supreme court held that, to trigger this statute, the plaintiff must have both knowledge of the injury and "knowledge that there is a reasonable possibility that the injury was caused by medical malpractice."  *Id.* at 181 (footnote omitted).  Such knowledge may not be imputed, however, to an adult who has no ability to be consciously aware of such injury.  In *Arthur v. Unicare Health Facilities, Inc.*, 602 So. 2d 596 (Fla. 2d DCA 1992), the Second District reasoned that, by using the term "discovered" in section 95.11(4)(b), Florida Statutes, "the legislature anticipated and intended an ability of conscious awareness on the part of a victim of alleged malpractice to trigger the statute running."  *Id.* at 599.  Thus, where the victim was blind, deaf, and senile, he could not "discover" the action, and notice could not be imputed to him to commence the running of the statute of limitations. *Id.*

Where the victim of the malpractice is an adult, knowledge of another cannot be imputed to him unless that person has a legal duty, such as a guardian's duty, to protect the ward's interest.  For instance, in *Thomas v. Lopez*, 982 So. 2d 64, 68 (Fla. 5th DCA 2008), the court held that, even if the victim's mother knew of malpractice, her knowledge could not be imputed to her unconscious adult daughter prior to the mother's appointment as plenary guardian, because the mother had no duty to pursue medical malpractice until her appointment.

The purpose of an emergency temporary guardianship is to protect a person who has not as yet been declared incapacitated, where there is imminent danger to the person's health, safety, or property.  Section 744.3031, Florida Statutes (2010), on ETGs provides:

> (1) A court, prior to the appointment of a guardian but after a petition for determination of incapacity has been filed

4

pursuant to this chapter, may appoint an emergency temporary guardian for the person or property, or both, of an alleged incapacitated person. *The court must specifically find that there appears to be imminent danger that the physical or mental health or safety of the person will be seriously impaired or that the person's property is in danger of being wasted, misappropriated, or lost unless immediate action is taken.* The subject of the proceeding or any adult interested in the welfare of that person may apply to the court in which the proceeding is pending for the emergency appointment of a temporary guardian. *The powers and duties of the emergency temporary guardian must be specifically enumerated by court order.* . . .

(3) The authority of an emergency temporary guardian expires 90 days after the date of the appointment or when a guardian is appointed, whichever occurs first. The authority of the emergency temporary guardian may be extended for an additional 90 days upon a showing that the emergency conditions still exist.

(Emphasis added). The appointment of an ETG is thus an interim measure for the time period between the filing of a petition to determine incapacity and the actual determination of incapacity. By conferring rights on the ETG, the court temporarily removes these rights from the allegedly incapacitated person. *See Jasser v. Saadeh*, 97 So. 3d 241, 248 (Fla. 4th DCA 2012). For instance, in *Jasser*, an ETG was appointed because the court found that the potentially incapacitated person was in danger of financial abuse and depletion of his accounts. *Id.* at 244 (ultimately determining that the person was not incapacitated).

Appellant's petition for appointment as ETG alleged that Chad was in a coma and that he needed an emergency guardian to make medical decisions for him and to "otherwise manage his medical and financial affairs." The petition did not specifically describe any imminent danger to Chad or his property. The order appointing appellant as ETG did not specifically enumerate the powers appellant could exercise. Instead, the order simply stated that she had "[a]ll powers and duties given to a plenary guardian of the person and property, including but not limited to authority to consent to medical treatment for the ward and to demand, obtain, review and release to others the medical records of the ward." It did not specifically enumerate the power or duty to sue.

An important part of the statutory framework is that an ETG's powers be "specifically enumerated by court order." The term "plenary guardian" is defined by statute and "means a person who has been appointed by the court to exercise all delegable legal rights and powers of the ward after the court has found that the ward lacks the capacity to perform all of the tasks necessary to care for his or her person or property." § 744.102(9)(b), Fla. Stat. (2010). However, in another case where letters of guardianship for an ETG gave plenary powers to the ETG without listing those powers, the Fifth District indicated its disapproval of this practice of giving unenumerated plenary powers to an ETG, saying: "The legislature, in promulgating F.S. 744.3031, had a basis for requiring that an emergency temporary guardian's powers be enumerated[.]" *Batzle v. Baraso*, 776 So. 2d 1107, 1109 (Fla. 5th DCA 2001). Practitioners are also advised that the statute requires the *specific* enumeration of powers for an ETG. *See* § 744.3031(1), Fla. Stat. (2010) ("The powers and duties of the emergency temporary guardian must be specifically enumerated by court order."); David C. Brennan, *Fla. Guardianship Law & Proc.* § 6.5 (2d ed. June 2014) ("Even if the emergency temporary guardian is to be given plenary powers, those powers should be specifically enumerated."). This is so because an ETG is something of an anomaly. He or she assumes a guardianship over a person not yet declared to be incapacitated and in need of a guardian. Thus, an ETG's powers should be limited to only those that are necessary to protect the ward's interests until the determination of incapacity (or capacity) is made. The ETG statute protects a potentially incapacitated individual during the short period of time necessary to determine incapacity and set up the plenary guardianship, but only where there is imminent danger to the ward or his property. *See* § 744.3031(1), Fla. Stat. (2010) ("The court must specifically find that there appears to be imminent danger that the physical or mental health or safety of the person will be seriously impaired or that the person's property is in danger of being wasted, misappropriated, or lost unless immediate action is taken."). Thus, even if a court can simply designate that an ETG has "plenary" powers and duties, those powers should be construed narrowly.

Our court has previously held that the potential knowledge of an ETG of medical malpractice should not be imputed to an incapacitated individual for the purposes of computing the running of the statute of limitations. In *Stone v. Rosenthal*, 665 So. 2d 276 (Fla. 4th DCA 1995), the victim of the alleged malpractice went into a coma during an operation, and his wife was appointed the ETG of his person and property for about three months.[2] His son was then appointed permanent guardian of his

___

[2] The governing statute on the date of her appointment did not allow for an ETG to be guardian of the property. *See* § 744.3031, Fla. Stat. (1989). However,

person, but the record was unclear as to whether a guardian of the property was appointed. After the ward died, the wife filed a malpractice action as personal representative of his estate. The defendant doctor claimed that the statute of limitations barred the action, measured either from "the date the alleged malpractice occurred, the date Appellant started to investigate it, the date she hired an attorney, or, at the latest, the date [the son] was appointed as Stone's permanent guardian." *Id.* at 277. Relying on *Arthur*, we concluded that the statute of limitations did not run from any of those dates, because a guardian of the property had not been appointed for the decedent. We specifically rejected the notion that the ETG had the duty to file a malpractice action:

> We do not believe that Appellant's temporary status as Stone's emergency guardian imposed upon her the duty to file a malpractice suit on his behalf. Nor does the record on appeal show that [the son] (or anyone else) was appointed permanent guardian of Stone's property, nor does the record indicate that he had notice of the possible malpractice at any time earlier than two years prior to Appellant's filing suit.

*Id.* at 278. The *Stone* opinion does not state whether the ETG was granted the powers of a plenary guardian, although it does state that the ETG was guardian of the person and property.

We agree with *Stone* that the temporary nature of an ETG's appointment does not impose the legal duty on the ETG to protect the ward's interest in a medical malpractice suit. The ETG's purpose is to secure the health and safety of the temporary ward until his capacity can be determined and then, if necessary, a plenary guardian can be appointed. This does not contemplate the pursuit of a medical malpractice suit, which requires the retention of experts and careful analysis of the care and treatment of the person, something that could never be accomplished within the short duration of the appointment of an ETG. *See* § 744.3031(3), Fla. Stat. (2010) (providing that an ETG's authority expires 90 days after his appointment, and may be extended for one additional 90-day period); *Batzle*, 776 So. 2d at 1109 (extending ETG's appointment for an indefinite time period was a departure from the essential requirements of law). Thus, whether the ETG had knowledge of the possibility of medical

---

shortly thereafter an amendment to the statute became effective which permitted an ETG to act as guardian of the property also. *See* Ch. 90-271, Laws of Fla., (effective October 1, 1990). We presume that, when an extension of the ETG was applied for, the court granted the wife authority as guardian of the property.

malpractice should not be imputed to the ward to commence the running of the statute of limitations. Knowledge may be imputed from the date a permanent plenary guardian of Chad's property is appointed. *Stone*, 665 So. 2d at 278. We also construe *Thomas* as consistent with this position, because *Thomas* held that the knowledge of the mother of the malpractice victim could not be imputed to the victim "at least" until the mother was appointed "plenary guardian." 982 So. 2d at 68. We interpret this language in *Thomas* as referring to a permanent plenary guardian, as that is how section 744.102(9)(b) defines "plenary guardian." *See* § 744.102(9)(b), Fla. Stat. (2010). Thus, *Thomas* would also suggest that knowledge of an ETG should not be imputed for the purposes of the statute of limitations.

Chad was not declared incapacitated and appellant appointed his plenary guardian until May 19, 2010. Based upon that date, the action for malpractice at issue here was filed within the statute of limitations. For these reasons, we reverse the final summary judgment and remand for further proceedings.

GROSS and FORST, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***